**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

———————————————————————
EARL FITZHUGH,                                  )
                                              )

|  |  |  |
|---|---|---|
| EARL FITZHUGH, | ) | |
| | ) | |
|     **Plaintiff,** | ) | **Civil Action No.** |
| | ) | **19-12394-FDS** |
|     **v.** | ) | |
| | ) | |
| HSBC BANK USA, NAT'L ASSOC.; | ) | |
| OCWEN LOAN SERVICING LLC; and | ) | |
| PHH MORTGAGE, | ) | |
| | ) | |
|     **Defendants.** | ) | |

———————————————————————

**MEMORANDUM AND ORDER ON**
**DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

SAYLOR, C.J.

This is a lawsuit arising out of a mortgage foreclosure.  Plaintiff Earl Fitzhugh,

proceeding *pro se*, has sued the mortgage trustee and mortgage servicers to enjoin foreclosure.[1]

Defendants have moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).  For the

reasons set forth below, the motion will be granted.

## I.    Background

Earl Fitzhugh is the owner of real property located at 102 Lawrence Avenue in

Dorchester, Massachusetts.  (Compl. 1, ¶ 4).  HSBC Bank USA, National Association ("HSBC")

is a banking institution with its principal place of business in Virginia.  (*Id.* ¶ 7).  Ocwen Loan

Servicing, LLC ("Ocwen") is a mortgage servicer with a principal place of business in Florida.

(*Id.* ¶ 5).  Ocwen's successor by merger, PHH Mortgage Corporation ("PHH"), is a mortgage

---

[1] Plaintiff also sued the foreclosure auctioneer and an employee of the auctioneer.  On February 13, 2020, the Court dismissed all counts against those defendants.

servicer with its principal place of business in New Jersey.  (*Id.* ¶ 6).

On August 26, 2005, Fitzhugh executed an adjustable-rate note in the amount of $311,250 with Fremont Investment & Loan ("Fremont").  (Compl. Ex. F).  As security for that note, Fitzhugh granted Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Fremont, a mortgage on real property located at 102 Lawrence Avenue in Dorchester, Massachusetts.  (Dkt. No. 23 Ex. A).[2]

On April 3, 2006, MERS assigned the mortgage to Fremont.  (*Id.* Ex. B).  Approximately two years later, Fremont assigned the mortgage to HSBC.  (*Id.* Ex. C).  On July 23, 2018, Signature Group Holdings Inc. ("Signature"), successor in interest to Fremont, executed a corrective assignment of the mortgage to HSBC.  (*Id.* Ex. D).

Fitzhugh failed to make monthly loan payments.  Although the sequence is unclear, at a minimum he failed to make payments from August 2007 through September 2009 and from August 2015 through June 2016.  (Dkt. No. 23 Ex. I at 1).

On June 8, 2016, Ocwen sent Fitzhugh a letter entitled "90-Day Right to Cure Your Mortgage Default."  (*Id.*).  That letter stated, among other things, that Fitzhugh was required to "pay the past due amount of $280,924.01 on or before 9/13/2016" and that failure to pay may result in his eviction after a foreclosure sale.  (*Id.* at 1, 4).  It also explained that Fitzhugh had "the right to reinstate the loan after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense . . . to acceleration and sale."  (*Id.* at 5).

Fitzhugh failed to cure the default.  On October 2, 2018, as part of foreclosure

---

[2] In support of defendants' motion for judgment on the pleadings, defense counsel submitted an affidavit that included as exhibits publicly available documents and documents relied on by the complaint.  As with a motion to dismiss, on a motion for judgment on the pleadings, the Court may consider "not just the facts alleged in the complaint, but documents referenced in or attached to same or matters of public record . . . ."  *Toussaint v. Care.com Inc.*, 2020 WL 5751527, at *1 n.1 (D. Mass. Sept. 25, 2020) (citing *In re Colonial Mortgage Bankers Corp.*, 324 F.3d 12, 20 (1st Cir. 2003)).  Accordingly, the Court may consider those exhibits when ruling on defendants' motion for judgment on the pleadings.

proceedings, HSBC recorded affidavits certifying compliance with Mass. Gen. Laws ch. 244, §§ 35B, 35C.  (*Id.* Ex. E; *id.* Ex. F).  It scheduled a foreclosure sale for March 14, 2019, which was ultimately rescheduled for November 25, 2019.  (Compl. Ex. C; *id.* Ex. I).

On March 20, 2019, Fitzhugh sent a demand letter to Signature pursuant to Mass. Gen. Laws ch. 93A.  (*Id.* Ex. E).  That letter identified various allegedly unfair and deceptive business practices.  (*Id.* at 1-2).  Those practices included recording "false and fraudulent," "legally void," "deceptive," and "unperfected and legally deficient" documents concerning the mortgage.  (*Id.*).

On November 22, 2019, three days before the scheduled foreclosure, Fitzhugh filed this action.  The complaint alleges several counts arising out of the foreclosure process:  wrongful foreclosure in violation of the "*Fremont* Injunction" (Count 1) (*id.* ¶¶ 14-19); violation of Mass. Gen. Laws ch. 93A through the terms of the underlying mortgage loan (Count 2) (*id.* ¶¶ 20-28); violation of Mass. Gen. Laws ch. 93A for slander of title (Count 3) (*id.* ¶¶ 29-30); violation of Mass. Gen. Laws ch. 93A for a "foreclosure rescue scam" (Count 4) (*id.* ¶¶ 31-32); wrongful foreclosure in violation of the "*Eaton* Ruling" (Count 5) (*id.* ¶¶ 33-40); wrongful foreclosure in violation of Mass. Gen. Laws ch. 183, § 21 (Count 6) (*id.* ¶ 41); wrongful foreclosure in violation of Mass. Gen. Laws ch. 244, § 35B (Count 7) (*id.* ¶¶ 42-45); foreclosure barred by statute of limitations under Mass. Gen. Laws ch. 106, § 3-118 (Count 8) (*id.* ¶¶ 46-54); foreclosure barred by promissory estoppel (Count 9) (*id.* ¶¶ 55-63); and a claim to "enjoin[] foreclosure until a decision is reached in *Garland v. Orlans PC*" (Count 10) (*id.* ¶¶ 64-68).[3]

On December 16, 2019, HSBC, Ocwen, and PHH filed an answer to the complaint.  On May 1, 2020, the same parties moved for judgment on the pleadings pursuant to Fed. R. Civ. P.

---

[3] Plaintiff appears to have adopted a system of delineating claims and counts, with some claims containing multiple counts and other claims being a stand-alone count.  For simplicity's sake, the Court will call each separate legal or factual argument a "count" and endeavor to make it clear where each count appears in the complaint.

12(c).

## II.    <u>Legal Standard</u>

A Rule 12(c) motion for judgment on the pleadings differs from a Rule 12(b)(6) motion to dismiss primarily because it is filed after the close of pleadings and "implicates the pleadings as a whole." *Aponte-Torres v. University of Puerto Rico*, 445 F.3d 50, 54-55 (1st Cir. 2006). But it is treated similarly. *See id.* at 54. To survive a motion for judgment on the pleadings, a complaint must state a claim that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). For a claim to be plausible, the "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id.* at 555 (internal citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).

In determining whether a complaint satisfies that standard, a court must assume the truth of all well-pleaded facts and give the plaintiff the benefit of all reasonable inferences. *See R.G. Fin. Corp. v. Vergara-Nuñez*, 446 F.3d 178, 182 (1st Cir. 2006). Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

A document filed by a *pro se* party "is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (internal quotation marks and citations omitted) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also* Fed. R.

Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").  However, while *pro se*

complaints are "accorded an extra degree of solicitude," they nevertheless must satisfy the

pleading standard.  *See Wright v. Town of Southbridge*, 2009 WL 415506, at *2 (D. Mass. Jan.

15, 2009) (internal quotation marks omitted) (quoting *Adams v. Stephenson*, 1997 WL 351633, at

*1 (1st Cir. June 23, 1997)).

**III.   Analysis**

> **A.   Count 1:  "*Fremont* Injunction"**

The complaint first alleges that the foreclosure violated the terms of a consent agreement

between Fremont and the Commonwealth of Massachusetts.  (Compl. ¶¶ 14-19).  That

agreement requires Fremont to notify the Massachusetts Attorney General prior to initiating any

foreclosures in the state.  *See* Final Judgment by Consent, *Commonwealth v. Fremont Inv. &

Loan*, No. 07-4373-BLS1 (Mass. Sup. Ct. June 9, 2009) ("*Fremont* Consent Agreement").

Defendants contend that plaintiff does not have standing to sue under the agreement.  (Def.

Mem. at 5-6).  Alternatively, defendants contend that they properly received permission from the

Attorney General prior to initiating the foreclosure.  (*Id.* at 6).

The consent agreement resulted from litigation filed by the Attorney General against

Fremont under Mass. Gen. Laws ch. 93A.  *See Fremont* Consent Agreement at 2.  The Attorney

General alleged that Fremont used unfair and deceptive business practices as part of its

mortgage-foreclosure process in Massachusetts.  *See id*.  The agreement mandates that Fremont

receive approval from the Attorney General prior to initiating any foreclosure in the state:

> Before initiating or advancing a foreclosure on any mortgage loan originated by
> [Fremont] . . . , [Fremont] shall first provide the Attorney General thirty days'
> advance written notice so that the Attorney General can verify that the proposed
> foreclosure [falls outside the scope of this agreement] . . . .  If the Attorney
> General has not given written notice of an objection to [Fremont] by the thirtieth
> day . . . [Fremont] may proceed with the foreclosure.

*Id.* at 10; *see also Woods v. Wells Fargo Bank, N.A.*, 733 F.3d 349, 356-57 (1st Cir. 2013)

(describing the consent agreement).  However, it expressly disclaims the creation of any private

right of action:

> [T]his Final Judgment by Consent is not intended to confer upon any persons any
> rights or remedies, including rights as a thirty party beneficiary, and this Final
> Judgment by Consent is not intended to create, restrict, or otherwise impact any
> private right of action on the part of any person or entity other than the Parties.

*Fremont* Consent Agreement at 16.  Given that express disclaimer, it does not appear that

plaintiff can sue to enforce the consent agreement.  *See Woods*, 733 F.3d at 357 ("[I]t is far from

clear how any such violation [of the *Fremont* consent agreement] could be enforced by private

litigants . . . .").

In any event, defendants in fact complied with the agreement as to the foreclosure here.

On August 16, 2017, the Attorney General's Office sent defendants' foreclosure counsel a letter

concerning the foreclosure of plaintiff's property.  (*See* Dkt. 23 Ex. H).[4]  The letter stated that

the Attorney General's Office "withdraw[s] [its] previous objection, and register[s] no further

objections to the proposed foreclosure under the permanent injunction in *Commonwealth v.

Fremont Investment & Loan*."  (*Id.*).  That letter thus directly contradicts plaintiff's allegation

that defendants failed to comply with the consent agreement.  (Compl. ¶ 17).  When a document

that the court may properly consider contradicts an allegation in the complaint, "the document

trumps the allegation."  *Lowenstern v. Residential Credit Sols.*, 2013 WL 697108, at *3 (D.

Mass. Feb. 25, 2013) (citing *Clorox Co. P.R. v. Procter & Gamble Commercial Co.*, 228 F.3d

24, 32 (1st Cir. 2000)).  The complaint therefore fails to state a claim that the foreclosure

---

[4] Because the letter—or to be precise, the absence of the letter—is "central" to plaintiff's complaint, the
Court may consider it without converting the motion into one for summary judgment.  *See Mehta v. Ocular
Therapeutix, Inc.*, 955 F.3d 194, 198 (1st Cir. 2020).

violated the *Fremont* Consent Agreement.

Accordingly, judgment on the pleadings will be granted as to Count 1.

**B.**    **Count 2:  Chapter 93A – Unfair Mortgage Terms**

The complaint next alleges that the terms of the mortgage loan violated Mass. Gen. Laws

ch. 93A "*ab initio*" because it was "a presumptively unfair loan" under *Commonwealth v.*

*Fremont Investment & Loan*, 452 Mass. 733 (2008).  (Compl. ¶ 21).  In that decision, the

Massachusetts Supreme Judicial Court identified four characteristics that make mortgage loans

"presumptively unfair."  *See id.* at 751.[5]  The complaint alleges that "[i]f the loan in question

possessed [those] four characteristics, the loan [is] presumed unfair and predatory in nature."

(Compl. ¶ 22).  It further alleges that "even if the loan did not have all of the four

characteristics . . . the loan could still be construed unfair or predatory under [Mass. Gen. Laws

ch. 93A] by a showing of other factors or circumstances."  (*Id.* ¶ 24).

Defendants contend that plaintiff's claim is time-barred.  The limitations period for

claims brought under Chapter 93A is four years.  *See* Mass. Gen. Laws ch. 260, § 5A; *O'Brien v.*

*Deutsche Bank Nat'l Tr. Co.*, 948 F.3d 31, 35 (1st Cir. 2020).  Plaintiff's claim is based on the

---

[5] More specifically, in *Fremont*, the SJC upheld a preliminary injunction temporarily enjoining foreclosures on mortgage loans with the following characteristics:

(1) [T]he loans were [adjustable rate mortgage] loans with an introductory rate period of three years or less;

(2) they featured an introductory rate for the initial period that was at least three per cent below the fully indexed rate;

(3) they were made to borrowers for whom the debt-to-income ratio would have exceeded fifty percent had Fremont measured the borrower's debt by the monthly payments that would be due at the fully indexed rate rather than under the introductory rate; and

(4) the loan-to-value ratio was one hundred per cent, or the loan featured a substantial prepayment penalty . . . or a prepayment penalty that extended beyond the introductory rate period.

*Fremont*, 452 Mass. at 739.

terms of his mortgage loan, which were apparent to him when he executed that loan. (Compl. ¶ 21). Any potential cause of action based on the mortgage terms thus accrued at that time. *See Latson v. Plaza Home Mortg., Inc.*, 708 F.3d 324, 327 (1st Cir. 2013) (rejecting plaintiff's argument that discovery rule should toll limitations period for Chapter 93A claim based on the terms of mortgage loan). Indeed, the complaint alleges that the mortgage loan violated Chapter 93A from the beginning. (Compl. ¶ 21 (alleging that the mortgage loan violated Chapter 93A "*ab initio*")). The four-year limitations period therefore began to run on the signing date—August 26, 2005. (Dkt. No. 23 Ex. A at 1). As a result, plaintiff's Chapter 93A claim based on the terms of the mortgage is time-barred. *See O'Brien*, 948 F.3d at 35 (concluding that plaintiff's Chapter 93A claim based on the mortgage terms accrued at the inception of the loan); *Latson*, 708 F.3d at 327 (same).

Accordingly, judgment on the pleadings will be granted as to Count 2.

### C.      Count 3:  Chapter 93A – Slander of Title

The complaint next asserts a claim for "slander of title and violations of [Chapter 93A]." (Compl. ¶ 29). It alleges that "[d]efendants have caused to be recorded in the public records various documents containing forged signatures and false sworn statements," including several affidavits and assignments, "which have impaired [plaintiff's] title." (*Id.*). It further alleges that plaintiff "disputes the validity of the information and signatures contained in these recorded documents and avers that the Defendants knew or should have known of the false statements, forged signatures and forged dates contained therein." (*Id.* ¶ 30).

Defendants contend that plaintiff "provides no factual information regarding the alleged forgeries and fails to identify specific documents alleged to be forged beyond glancing references to categories of documents, principally affidavits and assignments." (Def. Mem. at 8). Alternatively, defendants contend that because the affidavits and assignments comply with Mass.

8

Gen. Laws ch. 183, § 54B, they are presumptively valid.  (*Id.* at 8-9).

Under Massachusetts law, to prove slander of title, a plaintiff must show that "(1) the defendant made a false statement, (2) which was published with malice, and (3) caused injury to the plaintiff."  *Dumeus v. CitiMortgage, Inc.*, 2015 WL 404611, at *2 (D. Mass. Jan. 29, 2015) (quoting *George v. Teare*, 2000 WL 1512376, at *3 (Mass. Sup. Ct. Sept. 5, 2000)).  Slander of title is "essentially a claim of defamation where the false statement focuses on the plaintiffs' rights in property," such as a "defamatory recording."  *RFF Family P'ship v. Ross*, 814 F.3d 520, 531 (1st Cir. 2016) (quoting *George*, 2000 WL 1512376, at *3).  Here, plaintiff alleges that defendants made false statements concerning his title by publicly recording various documents "containing forged signatures and false sworn statements."  (Compl. ¶ 29).

But if those documents are in fact valid, it is not possible for their recordation to be actionable as slander of title, because that would mean that the statements about which plaintiff complains are true.  *See Johnson v. Wilmington Tr., N.A.*, 2016 WL 5109510, at *5 (D. Mass. Sept. 20, 2016).  Under Massachusetts law, affidavits and assignments that are executed in compliance with Mass. Gen. Laws ch. 183, § 54B are "presumptively valid."  *Gillogly v. Deutsche Bank Nat. Tr. Co.*, 2016 WL 3634236, at *1 (Mass. App. Ct. 2016) (unpublished) (citing *Bank of N.Y. Mellon Corp. v. Wain*, 85 Mass. App. Ct. 498, 502-04 (2014)).  That statute provides that assignments and affidavits "executed before a notary public . . . by a person purporting to hold the position of president, vice president, . . . or other officer . . . of the entity holding such mortgage, or otherwise purporting to be an authorized signatory for such entity . . . shall be binding upon such entity . . . ."  Mass. Gen. Laws ch. 183, § 54B.

Here, the affidavits and assignments that the complaint alleges contained forged signatures and false sworn statements appear to comply with Section 54B:  They were executed

before a notary public by an individual purporting either to hold the appropriate position of the entity holding the mortgage or to be an authorized signatory for that entity.  (Dkt. No. 23 Ex. B (assignment of mortgage); *id.* Ex. C (second assignment of mortgage); *id.* Ex. D (corporate assignment of mortgage); *id.* Ex. E (section 35B affidavit); *id.* Ex. F (section 35C affidavit)). The documents are therefore presumptively valid.  Because the complaint makes no plausible allegations of any facts sufficient to overcome that presumption, the complaint fails to state a claim for slander of title.  *See Johnson*, 2016 WL 5109510, at *5 (dismissing slander of title claim based on recordation of mortgage assignments where assignments were valid because they complied with section 54B).

Accordingly, judgment on the pleadings will be granted as to Count 3.

### D.  Count 4:  Chapter 93A – "Foreclosure Rescue Scam"

The complaint next alleges a violation of Chapter 93A based on a "foreclosure rescue scam."  (Compl. ¶¶ 31-32).  In substance, the complaint alleges that defendants are engaged in a scam whereby they use, among other tactics, foreclosure threats and undisclosed agents to pressure property owners to transfer their property rights to banks.  (*Id.* ¶ 31).  Defendants contend that plaintiff cannot bring a Chapter 93A claim based on these allegations because plaintiff did not include them as part of his Chapter 93A demand letter.  (Def. Mem. at 9-10).

At least 30 days before filing an action under section 9 of Chapter 93A, a plaintiff is required to send a written demand letter to the prospective defendant.  *See* Mass. Gen. Laws ch. 93A, § 9(3).  That letter must list the "specific deceptive practices" on which plaintiff's potential claim relies.  *Entrialgo v. Twin City Dodge, Inc.*, 368 Mass. 812, 812 (1975).  Sending a proper demand letter "is not merely a procedural nicety, but, rather, a prerequisite to suit."  *Rodi v. Southern New Eng. Sch. of Law*, 389 F.3d 5, 19 (1st Cir. 2004) (internal quotation marks omitted) (quoting *Entrialgo*, 368 Mass. at 833).

10

Here, plaintiff sent defendants a Chapter 93A demand letter on March 20, 2019.  (Compl. Ex. E).  The alleged unfair and deceptive business practices identified in that letter included defendants' recording "false and fraudulent," "legally void," "deceptive," and "unperfected and legally deficient" documents concerning plaintiff's mortgage.  (*Id.* at 1-2).  It did not "reasonably describe[e]" the foreclosure rescue scam detailed in the complaint.  Mass. Gen. Laws ch. 93A, § 9(3).  In fact, it did not describe that scam at all.  Plaintiff therefore may not bring a Chapter 93A claim based on those allegations.  *See Da Silva v. U.S. Bank, N.A.*, 885 F. Supp. 2d 500, 506 (D. Mass. 2012) ("Without a demand letter stating the specific alleged violations, Plaintiff cannot proceed with a claim of violation of Mass. Gen. Laws ch. 93A."); *Casavant v. Norwegian Cruise Line Ltd.*, 460 Mass. 500, 506 (2011) (explaining that demand letter must "describe the practices" with "specificity").[6]

Accordingly, judgment on the pleadings will be granted as to Count 4.

### E.      Count 5:  Wrongful Foreclosure in Violation of *Eaton*

The complaint next alleges that defendants may not foreclose on the property because defendants have not complied with the decision of the Supreme Judicial Court in *Eaton v. Federal Nat. Mortg. Ass'n*, 462 Mass. 569 (2012).  (Compl. ¶¶ 33-40).  In that case, the SJC held that a party may exercise the power of sale only if at the time of the sale it holds both the mortgage and the note.  *See Eaton*, 462 Mass. at 583-84.  The complaint alleges that defendants do not own "the mortgage and/or the underlying indebtedness" and "have caused to be recorded

---

[6] Plaintiff contends in his opposition that "[t]he Foreclosure Rescue Scam allegation is part of the claims in [a] second demand letter" that "was returned undelivered."  (Pl. Mem. at 17).  As an exhibit attached to his opposition, he included an image of the outside of an envelope sent to Signature that was returned to him.  (Dkt. No. 37 Ex. P).  Even if that demand letter sufficiently describes the foreclosure allegations, it did not reach defendants.  Because the demand-letter requirement is a jurisdictional prerequisite that is intended to give notice of the claims to defendants and encourage settlement discussions, that cannot satisfy plaintiff's demand-letter obligation under section 9.  *See Smith v. Jenkins*, 777 F. Supp. 2d 264, 267-68 (D. Mass 2011) (granting motion for judgment as a matter of law where "there is no evidence that the demand letter was received" by defendant).

in the public records fraudulent, legally insufficient and/or forged affidavits and assignments of the mortgage, in furtherance of their scheme to pursue this wrongful foreclosure." (Compl. ¶¶ 35-36).

Because Massachusetts is a non-judicial foreclosure state, banks generally foreclose by exercising the statutory power of sale. *See Galvin v. U.S. Bank, N.A.*, 852 F.3d 146, 156 (1st Cir. 2017) (citing Mass. Gen. Laws ch. 183, § 21; Mass. Gen. Laws ch. 244 §§ 11-17C; *Pinti v. Emigrant Mortg. Co.*, 472 Mass. 226 (2015)). To exercise that power, as the complaint alleges, "the foreclosing bank must hold both the note and the mortgage . . . ." *Id.* (citing *Eaton*, 462 Mass. at 583-84; *U.S. Bank Nat. Ass'n v. Ibanez*, 458 Mass. 637, 647 (2011)). If it does not, the foreclosure is void. *See id.*

Here, publicly recorded documents indicate that HSBC held the note and the mortgage at the time of the foreclosure sale. The section 35C affidavit certifies that HSBC held the note (Dkt. No. 23 Ex. F), and the assignments indicate that the mortgage was assigned from MERS to Fremont and then assigned from Fremont to HSBC (*id.* Ex. B; *id.* Ex. C; *id.* Ex. D). As noted above, those documents were executed in compliance with section 54B, making them presumptively valid under Massachusetts law. *See Gillogly*, 2016 WL 3634236, at *1 (citing *Wain*, 85 Mass. App. Ct. at 502-04). In light of that fact, the complaint's conclusory allegations that HSBC did not own either the mortgage or the underlying note are insufficient to state a claim that the foreclosure is invalid. *See Culley v. Bank of America, N.A.*, 2019 WL 1430124, at *5-6 (D. Mass. Mar. 29, 2019) (granting motion to dismiss where (1) recorded assignments indicated foreclosing bank was the mortgagee of record, and (2) affidavit executed pursuant to section 54B attested that foreclosing bank held the promissory note); *McAllister v. Countrywide Home Loans, Inc.*, 2016 WL 3360482, at *5 (D. Mass. June 16, 2016) (denying motion for

preliminary injunction where the plaintiff failed to provide "some evidence that [the foreclosing bank's] affidavits or recorded assignments are invalid" (citing *Eaton*, 462 Mass. at 589-90)).[7]

Accordingly, judgment on the pleadings will be granted as to Count 5.

### F.    Count 6:  Violation of Mass. Gen. Laws ch. 183, § 21

The complaint next alleges that defendants violated Mass. Gen. Laws ch. 183, § 21 by failing to comply with paragraph 22 of the mortgage.  (Compl. ¶ 41).  That paragraph requires, upon plaintiff's default and the subsequent acceleration of the loan, that Fremont provide plaintiff with notice that he has the right to cure the default.  (Dkt. No. 23 Ex. A ¶ 22).  That notice must specify, among other things, the action required to cure the default, the date by which the default must be cured, and that failure to cure may result in the sale of the property. (*Id.*).  It must also inform plaintiff of his right to reinstate after acceleration and his right to bring a court action to contest the default.  (*Id.*).  The complaint does not specify how defendants failed to comply with paragraph 22, but it appears to allege that they either wholly failed to provide notice or provided deficient notice.  (Compl. ¶ 41).

But defendants in fact provided proper notice.  On June 8, 2016, Ocwen sent plaintiff a letter titled "90-Day Right to Cure Your Mortgage Default."  (Dkt. No. 23 Ex. I).  That letter explained that plaintiff was required to "pay the past due amount of $280,924.01 on or before 9/13/2016."  (*Id.* at 1).  It also explained that if plaintiff failed to pay that amount, he "may be

---

[7] Plaintiff contends that defendants have not shown that they owned the promissory note because the copy of the note attached to the complaint is not dated.  (Pl. Opp. at 2-3 (citing Compl. Ex F)).  But even without a dated note, the section 35C affidavit, which certifies that HSBC is "[t]he holder of the promissory note secured by the [] mortgage," is sufficient to establish presumptive validity.  (Dkt. No. 23 Ex. F).

Plaintiff also contends that under section 9-203 of Massachusetts Uniform Commercial Code, "the purported foreclosing mortgagee must have given value for the underlying debt . . . to have a legal conveyance of the ownership of the debt."  (Pl. Opp. at 4-6).  Plaintiff reasons that because defendants "have not alleged in their Answer to the Complaint, their MJOP, or any affidavit that they gave value for the underlying debt," they have not shown that they had the right to enforce the mortgage.  (*Id.* at 6).  But Article 9 does not cover "the creation or transfer of an interest in or lien on real property."  Mass. Gen. Laws ch. 106, § 9-109(d)(11).

evicted from [his] home after a foreclosure sale." (*Id.* at 4). It further explained that plaintiff had "the right to reinstate the loan after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense . . . to acceleration and sale." (*Id.* at 5). The notice letter therefore directly contradicts plaintiff's allegation that defendants failed to comply with paragraph 22, and the complaint alleges no plausible facts to the contrary. *See Lowenstern*, 2013 WL 697108, at *3 (citing *Clorox Co. P.R.*, 228 F.3d at 32). As a result, the complaint fails to state a claim that defendants violated Mass. Gen. Laws ch. 183, § 21.

Accordingly, judgment on the pleadings will be granted as to Count 6.

### G.      Count 7:  Violation of Mass. Gen. Laws ch. 244, § 35B

The complaint next alleges that defendants have not complied with Mass. Gen. Laws ch. 244, § 35B because plaintiff "disputes the information, signature and authorizations contained in the purported affidavit of compliance with this Massachusetts statute which Defendants have recorded in the public records." (Compl. ¶ 42). It further alleges that defendants "are abusing [Mass. Gen. Laws ch. 244, § 35B] as a license to steal property through wrongful foreclosure in the name of an empty 'Trust'" and that the statutory scheme was "not meant to be used as a license to steal by unscrupulous interlopers engaged in a criminal enterprise." (*Id.* ¶¶ 44-45).

As described above, however, defendants' section 35B affidavit complies with Mass. Gen. Laws ch. 183, § 54B. (Dkt. No. 23 Ex. E). It was executed before a notary public by an individual purporting to hold the appropriate position of the entity holding the mortgage. (*Id.*). That affidavit is therefore presumptively valid under Massachusetts law. *See Gillogly*, 2016 WL 3634236, at *1 (citing *Wain*, 85 Mass. App. Ct. at 502-04). The complaint's conclusory allegations concerning an alleged criminal abuse of the statutory scheme are not sufficiently plausible to withstand dismissal.

Accordingly, judgment on the pleadings will be granted as to Count 7.

14

H.    **Count 8:  Statute of Limitations for Negotiable Instruments**

The complaint next alleges that any foreclosure action is time-barred.  (Compl. ¶¶ 46-54).

Mass. Gen. Laws ch. 106, § 3-118 establishes a six-year limitations period for actions to enforce

obligations under negotiable instruments.  *See* Mass. Gen. Laws ch. 106, § 3-118(a) ("[A]n

action to enforce the obligation of a party to pay a note payable at a definite time must be

commenced within six years after the due date or dates stated in the note or, if a due date is

accelerated, within six years after the accelerated due date.").  The complaint alleges that,

because the promissory note was accelerated in 2006, foreclosure is now time-barred.  (Compl.

¶¶ 51-54).

Under Massachusetts law, however, a mortgage is not a negotiable instrument; instead, it

is "a transfer of legal title to the mortgage property . . . made in order to secure a debt, [which is]

defeasible when the debt is paid."  *Eaton*, 462 Mass. at 575.  The mortgagee holds legal title to

the mortgaged property until the note is discharged.  *See id.*  Because a mortgage is not a

negotiable instrument, section 3-118 "does not apply to foreclosures."  *Simmons v. Deutsche*

*Bank Nat'l Tr. Co.*, 2018 WL 1924453, at *5 (D. Mass. Apr. 24, 2018) (quoting *Duplessis v.*

*Wells Fargo Bank, N.A.*, 2017 WL 2332709, at *2 (Mass. App. Ct. May 30, 2017)); *Junior v.*

*Wells Fargo Bank, N.A.*, 2017 WL 1199768, at *2 (D. Mass. Mar. 30, 2017) ("While [section 3-

118] may bar the collection of a note more than six years overdue, it has no effect on the *in rem*

rights in the title to the property.  Thus, while the mortgagee may not be able to bring an action

for a deficiency under the note, it may still foreclose the mortgage.").  As a result, foreclosure is

not barred by the statute of limitations.[8]

---

[8] Plaintiff also contends, for the first time in his opposition, that the mortgage itself is unenforceable under
the Massachusetts Obsolete Mortgage Statute.  (Pl. Mem. at 6 (citing Mass. Gen. Laws ch. 260, § 33)).  He reasons
that "[t]he acceleration of the Note advanced the maturity date of the Mortgage and started the clock ticking on the

Accordingly, judgment on the pleadings will be granted as to Count 8.

I.      **Count 9:  Promissory Estoppel**

The complaint next alleges a claim for promissory estoppel.  (Compl. ¶¶ 55-63).  It

alleges that in 2008, plaintiff "entered into a written agreement with Fremont's representatives to

pay a discounted amount to discharge their invalid mortgage lien . . . ."  (*Id.* ¶ 56).  It further

alleges that plaintiff signed an executed copy of that agreement and sent it, along with "a

substantial down payment," to Fremont.  (*Id.* ¶ 61).  The complaint alleges that Fremont never

returned an executed copy of the agreement or the down payment.  (*Id.*).

In order to assert a claim of promissory estoppel under Massachusetts law, the complaint

must allege that (1) defendant made a promise which he should reasonably expect to induce

action or forbearance of a definite and substantial character on the part of the plaintiff, (2) the

promise does induce such action or forbearance, and (3) injustice can be avoided only by

enforcement of the promise.  *See Neuhoff v. Marvin Lumber & Cedar Co.*, 370 F.3d 197, 203

(1st Cir. 2004).  As the Supreme Judicial Court has observed, "an action based on reliance is

equivalent to a contract action, and the party bringing such an action must prove all the necessary

---

five (5) year statute of repose."  (*Id.*).  That statute provides that a foreclosure proceeding is time-barred if more than
five years have passed since the mortgage matured:

> A power of sale in any mortgage of real estate shall not be exercised and an entry shall not be
> made nor possession taken nor proceeding begun for foreclosure of any such mortgage after the
> expiration of, in the case of a mortgage in which no term of the mortgage is stated, 35 years from
> the recording of the mortgage or, in the case of a mortgage in which the term or maturity date of
> the mortgage is stated, 5 years from the expiration of the term or from the maturity date, unless an
> extension of the mortgage, or an acknowledgment or affidavit that the mortgage is not satisfied, is
> recorded before the expiration of such period.

Mass. Gen. Laws ch. 260, § 33.  That claim is not set forth in the complaint, and therefore cannot be
asserted here.  In any event, plaintiff's contention—that acceleration of the note matures a mortgage that
secures the note—has been regularly rejected by courts in Massachusetts.  *See, e.g.*, *Nims v. Bank of N.Y.
Mellon*, 97 Mass. App. Ct. 123, 128 (2020); *Junior*, 2017 WL 1199768, at *1 (collecting cases); *Harry v.
Countrywide Home Loans*, 215 F. Supp. 3d 183, 187-88 (D. Mass. Oct. 18, 2016), *aff'd*, 902 F.3d 16, 18
(1st Cir. 2018).

elements of a contract other than consideration." *Rhode Island Hosp. Tr. Nat'l Bank v. Varadian*, 419 Mass. 841, 850 (1995).

Even if the complaint sufficiently alleges a claim for promissory estoppel, it alleges that claim only against Fremont. But Fremont is not a party to this litigation. The allegations do not implicate defendants.

Accordingly, judgment on the pleadings will be granted as to Count 9.

### J.      Count 10:  Injunction Based on *Garland v. Orlans PC*

Finally, the complaint alleges a claim for an injunction barring foreclosure "until a decision is reached in *Garland v. Orlans PC*, No. 18-cv-11561 (E.D. Mich. Nov. 21, 2018)." (Compl. ¶¶ 64-68). That case was a putative class-action lawsuit in the Eastern District of Michigan in which the complaint alleged that the defendants violated the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and the Michigan Regulation of Collection Practices Act, Mich. Comp. Laws § 445.251 *et seq. See Garland v. Orlans PC*, 2020 WL 2542036, at *1 (E.D. Mich. May 19, 2020). The claims were based on allegations that the defendants sent out foreclosure notices appearing to be from attorneys that were instead processed by non-attorney staff. *See id.* On November 21, 2018, the court stayed the litigation pending the Supreme Court's decision in *Obduskey v. McCarthy & Holthus LLP*. *See id.* On March 20, 2019, the Supreme Court issued its decision in that case, holding that a business engaged in non-judicial foreclosure proceedings is not a "debt collector" under section 1692a(6) of the FDCPA. *See Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029, 1040 (2019). Based on that decision, the district court in *Garland* granted defendants' motion to dismiss. *See Garland*, 2020 WL 2542036, at *2-7.

It does not appear that *Garland* was relevant to this matter at any point, not least because the complaint does not assert a claim based on the FDCPA. And, in any event, Count 10 is now

moot:  a decision has been issued in *Garland*, and it provides no support for an injunction to bar foreclosure or for the complaint's other claims.  Plaintiff appears to agree.  (Pl. Mem. at 23 ("Plaintiff hereby drops his claim under [Count 10].")).

Accordingly, judgment on the pleadings will be granted as to Count 10.

## IV.    <u>**Conclusion**</u>

For the foregoing reasons, defendants' motion for judgment on the pleadings is GRANTED as to all counts.

**So Ordered.**

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV

Dated:  December 3, 2020                Chief Judge, United States District Court